UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOSHUA TAYLOR,                      )
                                    )
                 Petitioner,        )
                                    )
         v.                         )        No. 2:20-cv-00612-JRS-MG
                                    )
FRANK VANIHEL Warden,               )
                                    )
                 Respondent.        )

**Order Denying Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Joshua Taylor petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number WVD 20-07-0021. For the reasons explained in this Order, Mr. Taylor's habeas petition must be **denied**.

**A.      Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

###### B.     The Disciplinary Proceeding

On July 5, 2020, Indiana Department of Correction (IDOC) Correctional Officer R. Smith wrote a Report of Conduct charging Mr. Taylor with violation of state law – obstruction of justice, Ind. Code § 35-44.1-2-2 – a violation of the IDOC's Adult Disciplinary Process offense A-100. The Report of Conduct provides:

> On 7-5-2020 at approx. 1:35 pm in CCU offender Taylor, Joshua #160810 who resides in C-212 dump[ed] a container of an unknown red liquid into the toilet when told to cuff up. Once placed out of cell and escorted to shower the red liquid with the smell of intoxicants was present on toilet and floor. Photos taken.

Dkt. 9-1.

Mr. Taylor was notified of the charge on July 9, 2020, when he received the Screening Report. Dkt. 9-3. He pled not guilty to the charge. *Id.*  Mr. Taylor requested three witnesses. *Id.* He asked that Nurse Firestone, Nurse Taylor, and Nurse Rogers be asked about his mentioning or being seen for vomiting. *Id.* Mr. Taylor also requested video evidence and a picture of the container involved. *Id.* These requests were denied because there was no video of the inside of Mr. Taylor's cell and no picture of the container had been taken. *Id.* Mr. Taylor later sent Request for Interview forms asking for different video evidence that would show him going to and from the stairs for sick call, dkt. 9-6 at 1, a witness statement from K. Smith stating that Mr. Taylor's window was not covered, *id.* at 2, and different video evidence from 1:20 pm to 1:35 pm showing him being taken to medical and returning, *id.* at 3. Mr. Taylor also asked for an incident report. *Id.* The incident report was denied because it related to a different incident, but the request for different video was added to Mr. Taylor's other requests for evidence. *Id.*

Nurse Rogers provided a written statement that she saw Mr. Taylor "vomit this morning at med pass." Dkt. 9-8 at 1. Nurse Firestone provided a written statement that she saw Mr. Taylor "for vomiting" on July 7, 2020. *Id.* at 3. He reported to her that he had not vomited since July 5,

2020. *Id.* Nurse Firestone added that Mr. Taylor reported no difficulty in consuming foods or liquids, and that he walked to the medical room without difficulty. *Id.*

Nurse Hill, erroneously listed on the screening report as Nurse Taylor, provided a written statement that Mr. Taylor was seen on July 5, 2020, during Nurse Sick Call and "appeared to be intoxicated" and reported that "his stomach felt upset." *Id.* at 2. Nurse Hill also reported that Mr. Taylor became irate, "started using obscene language" toward her, but never said that he was nauseous or that he had been vomiting. *Id.*

A hearing was held on July 23, 2020. Mr. Taylor's statement to the Disciplinary Hearing Officer (DHO) was:

> I asked video to show at door I was already cuffed up. I came from medical. I was never provided my evidence. I never received my denied evidence.

Dkt. 9-7. The DHO considered this statement, staff reports, and photographs of Mr. Taylor's cell toilet, *see* dkt. 9-2 at 1-5, and found Mr. Taylor guilty of violating state law (obstructing justice). Dkt. 9-7.  The DHO believed the conduct report to be true and was supported by the photographs. *Id.*  He imposed sanctions that included the loss of earned credit time. *Id.*

Mr. Taylor commenced the administrative appeals process, dkts. 9-9 & 9-10, but filed his petition for habeas corpus before his final appeal was denied. *See* dkt. 1 (filing date of November 20, 2020), and dkt. 9-10 (decision date of December 21, 2020). The respondent filed his return to the Show Cause Order (response to the petition) and the disciplinary record. Dkt. 9. Mr. Taylor filed a reply, dkt. 14, to which the respondent filed a "response," dkt. 16. Mr. Taylor then filed a "surreply." Dkt. 17. The petition is ready for a decision.

### C.    Analysis

In his petition, Mr. Taylor brings four grounds for relief that the respondent acknowledges are now exhausted for merits review. First, Mr. Taylor asserts he was denied a lay advocate, a

violation of his due process rights. Second, Mr. Taylor asserts he was denied evidence when the requested video evidence and a photograph of the container was not provided to him at the hearing. Third, Mr. Taylor asserts that a witness statement he requested was not provided. Fourth, and finally, Mr. Taylor asserts he was denied a written statement of the DHO's findings.

### 1.    Lay Advocate

Mr. Taylor asserts a number of arguments concerning the denial of a lay advocate, including his contention that the forms have been altered to show that he had one, that the purported lay advocate never spoke with him, and that officials did not follow IDOC policies providing for lay advocates. Dkt. 1 at 3.

Unfortunately for Mr. Taylor, "due process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570); *see Wilson-El v. Finnan*, 263 F. App'x 503, 506 (7th Cir. 2008).

It is clear from the disciplinary record, Mr. Taylor's petition, and the numerous other filings in this action that Mr. Taylor has submitted that he is not illiterate. He has adequately asserted his defense, albeit one that the DHO did not give as much credit to as he did the respondent's evidence. Therefore, any error in the appointment or service of a lay advocate does not violate the Constitution's Due Process Clause.

### 2.    Video and Photographic Evidence

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the

4

purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

Mr. Taylor's video evidence requests were for the video of what happened in his cell and video of him being taken to and from medical while in handcuffs secured behind his back. As to the first request, the respondent has asserted that no video recordings are made of the inside of offenders' cells. Dkt. 9 at 7. Mr. Taylor does not dispute this. *See, e.g.*, dkt. 15. Instead, he argues that the video of him being taken back to his cell, and walking into his cell while handcuffed, would show that he could not have poured out liquid from a container. *Id.* The respondent notes that the timeline of events does not establish that if Mr. Taylor walked into his cell while handcuffed, he could not have destroyed evidence as claimed by Officer Smith. Dkt. 16 at 2-3. As Mr. Taylor notes in his surreply filed February 15, 2021, Officer Smith's allegation is that when Mr. Taylor was ordered to "cuff up," he then dumped the liquid into the toilet. Dkt. 17. This was *before* Mr. Taylor was handcuffed. Thus, any video of Mr. Taylor *after* he was handcuffed and taken to and from medical would have marginal relevance, and in the context of the instant ground for relief, not exculpatory. *Scruggs*, 485 F.3d at 939-40.

A photograph of the container referenced in the conduct report apparently does not exist. Providing the photograph or a copy of it to Mr. Taylor was therefore impossible. And nothing in the record suggests that Officer Smith found a container or took a photograph of a suspected container. Because the respondent is not obligated to produce evidence he does not have, there was no due process violation. *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

### 3.      Witness Statement

Mr. Taylor argues that he was wrongfully denied a statement from Officer Smith stating that Officer Smith could not see inside his cell. *See* dkt. 15 at 3. The conduct report does not state that Officer Smith could see inside the cell. Certainly, that is a reasonable inference, but as the respondent argues, Mr. Taylor's guilt is not conditioned on that question. Thus, Officer Smith's statement as to what he could see, while relevant, is neither dispositive nor exculpatory. Additionally, there is no evidence that Officer Smith would have agreed with Mr. Taylor's contention that he could not see into the cell.

There was no due process error in the failure to obtain a statement from Officer Smith. But if there was error, it was harmless. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (applying harmless error doctrine to prison disciplinary habeas corpus actions).

### 4.      Written Statement of Findings

Finally, Mr. Taylor argues that he was not provided a written statement of the DHO's reasons for the finding of guilt and imposition of sanctions. Dkt. 1 at 4. The record, however, reflects that Mr. Taylor was mailed a copy of the DHO's findings on July 27, 2020. Dkt. 9-7.

"Due process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs*, 485 F.3d at 941 (internal quotation omitted). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* The DHO's report of disciplinary hearing, which contains the DHO's findings and basis for the decision, satisfies this due process requirement.

A primary due process purpose for this requirement is to facilitate the offender's administrative appeals. By receiving the written statement, the offender is on notice when his

appeal is due, and on what grounds to base the appeal. The administrative appeal record in this case shows that Mr. Taylor did not miss appeal deadlines, and he presented relevant assertions of error to the facility head. Dkt. 9-9. Mr. Taylor suffered no harm from the DHO's act of mailing the disciplinary hearing report to Mr. Taylor rather than handing a copy of the report to him at the conclusion of the hearing. Accordingly, Mr. Taylor's due process rights were not violated.

### D.   Conclusion

None of Mr. Taylor's four grounds for relief satisfy the heavy burden of proof in disciplinary habeas corpus cases. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Taylor to the relief he seeks. Accordingly, Mr. Taylor's petition for a writ of habeas corpus challenging prison disciplinary case WVD 20-07-0021 is **denied** and this action is **dismissed** with prejudice.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 5/31/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joshua Taylor
160810
Wabash Valley Correctional Facility - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
Carlisle, IN 47838

Abigail Recker
Indiana Attorney General
abigail.recker@atg.in.gov